J-S49005-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RASHON BOONE | |
| Appellant | No. 1544 EDA 2013 |

Appeal from the PCRA Order May 17, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0506921-2006

BEFORE:  OLSON, OTT and STABILE, JJ.

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 25, 2014**

Appellant, Rashon Boone, appeals from the order entered on May 17, 2013, dismissing his first petition filed under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The PCRA court has provided us with a thorough and well-written summary of the underlying facts and procedural posture.  As the PCRA court explained:

> On October 15, 2003[,] at approximately 9:28 a.m., [Appellant] approached Joseph Jackson (hereinafter "Joseph" on Chadwick Street near the southwest corner of Chadwick and Cumberland Streets in Philadelphia, Pennsylvania[.  Appellant] asked [Joseph] for some weed. Joseph testified that he told [Appellant] that he "didn't know what the [f____] he was talking about" and turned away. [Appellant] pulled an automatic weapon, pointed it at Joseph, and took a couple hundred dollars from Joseph's pocket.  Immediately thereafter, a man known as Butter, later identified as James Jackson (hereinafter "James"), walked to the southwest corner of Chadwick and

Cumberland Streets. [Appellant] turned, fired one shot at James, fled on Cumberland Street, and turned onto Bancroft Street. Joseph chased [Appellant] and saw him get into a black [Chevrolet] that subsequently sped away.

Aisha McCray (hereinafter "Aisha"), testified that at approximately 9:23 a.m. on October 15, 2003, she was standing on the 2400 block of Chadwick Street when Monique Bell (hereinafter "Monique"), [Appellant's] girlfriend, drove up in a black [Chevrolet] Celebrity. Monique warned her to get out of the area because "Rocky" [(who was later identified as Appellant) "]was getting ready to rob you all." Monique drove off and thereafter, Aisha walked up Chadwick Street, turned west on to Cumberland Street, and walked toward 17th Street. Aisha passed [Appellant] as he walked in the opposite direction on Cumberland Street and turned onto Chadwick Street. Approximately [one] minute later, Aisha heard gunshots; she turned and saw [Appellant], chased by Joseph, run from Chadwick Street, turn east on to Cumberland Street, and run to Bancroft Street. [Appellant] got into Monique's [Chevrolet] Celebrity and they sped away.

Before Aisha testified, Monique testified that she had no memory of any of the events on October 15, 2003. She denied that she spoke to Aisha, participated in a robbery, or drove [Appellant] away from the crime scene.

However, [Appellant] testified that Monique dropped him off at the intersection of York and Chadwick Streets so he could buy some marijuana. Unable to find a seller at York Street, [Appellant] proceeded to Cumberland Street. He passed Aisha on Cumberland Street and asked her if there was anyone selling marijuana nearby[.] Aisha turned and pointed to Joseph and James on the corner of Chadwick and Cumberland Streets. [Appellant] met with Joseph at the corner of Chadwick and Cumberland Streets, and got into an argument over the purchase of some marijuana. James walked towards [Appellant], told him to "get the [f____] out of here . . . [because he was] drawing the cops," and drew a gun. [Appellant] admitted that he turned towards James, drew his gun, and shot him. He stated that he ran to Bancroft Street, and jumped into Monique's car. [Appellant]

- 2 -

hid the [gun] under the glove compartment in Monique's car.

Police responded to reports of a shooting, arrived at the corner of Chadwick and Cumberland Streets within minutes and found James lying on the street. James was transported to Temple University Hospital where he was pronounced dead at 10:45 a.m. The medical examiner testified that the cause of death was homicide. James sustained a single [gunshot] wound to the lower abdomen and suffered extensive blood loss; the bullet penetrated and damaged the bowel, the right common iliac artery, and exited the left buttock.

A black [Chevrolet] Celebrity owned by Monique was located on the 2100 block of North 20th Street and [the police searched the vehicle]. A [nine-millimeter, 14-round] capacity gun, loaded with two rounds of Remington brand ammunition and three rounds of Federal brand ammunition, was recovered from under the glove compartment. The firearms expert determined that the fired Speer brand [nine-millimeter] cartridge case recovered 45 feet from the corner of Chadwick and Cumberland Streets and the bullet recovered from the stretcher used to transport James to the hospital were fired from that gun. . . .

Police attempts to locate [Appellant] in Philadelphia after the shooting were unsuccessful. [Appellant] fled Philadelphia and was subsequently found with Monique in Richmond, Virginia on January 31, 2005.

. . .

On May 15, 2007, following a bench trial . . . , [Appellant] was convicted of [second-degree murder, robbery, criminal conspiracy, and possessing instruments of crime.[1]] Sentencing was deferred until July 10, 2007, on which date [Appellant] was sentenced to the mandatory term of life imprisonment. . . . [Appellant] filed a timely notice of

_____

[1] 18 Pa.C.S.A. §§ 2502(b), 3701(a)(1)(i), 903(a)(1), and 907(a), respectively.

appeal, and the Superior Court affirmed [Appellant's] judgment of sentence on June 25, 2008. [*Commonwealth v. Boone*, 959 A.2d 457 (Pa. Super. 2008) (unpublished memorandum), at 1-12, *vacated in part*, *Commonwealth v. Boone*, ___ A.2d ___, 398 EAL 2008 (Pa. 2009). Appellant] filed a petition for allowance of appeal, which our Supreme Court granted in part[] and denied in part on January 2, 2009.[fn.1]

> [fn.1] . . . The case was summarily disposed on [January 2, 2009]; as to the sole issue upon which the petition for allowance of appeal was granted – "the issue of merger" – our Supreme Court vacated [Appellant's] sentence for robbery, as it had merged with the sentence for second-degree murder pursuant to *Commonwealth v. Tarver*, 426 A.2d 569, 573 (Pa. 1981). As [Appellant's] sentences for second-degree murder, conspiracy[, and possessing instruments of crime] remained, the Supreme Court did not remand the case for [resentencing. *Commonwealth v. Boone*, ___ A.2d ___, 398 EAL 2008 (Pa. 2009)].

On December 24, 2009, [Appellant] filed a timely *pro se* [PCRA] petition. . . . On July 15, 2011, [Appellant privately retained] Sondra Rodrigues, Esquire [as his counsel]. Ms. Rodrigues filed a consolidated amended PCRA petition and memorandum of law on April 20, 2012.

After the Commonwealth [filed] a motion to dismiss . . . , [the PCRA] court scheduled an evidentiary hearing solely as to [Appellant's] claim that trial counsel was ineffective for advising [Appellant] not to accept favorable offers to plead guilty. The evidentiary hearing took place on December 19, 2012, and continued on December 28, 2012.

On December 28, 2012, at the conclusion of the evidentiary hearing, [the PCRA] court permitted Ms. Rodrigues to withdraw as counsel for health reasons. On that same date, [the PCRA] court informed [Appellant] that [new] counsel would be appointed for the purpose of reviewing an additional claim [Appellant] wanted to raise, as well as for the purpose of representing him on appeal.

On December 28, 2012, [the PCRA] court [concluded] that [Appellant's] claim that counsel was ineffective for failing to advise [him] of favorable plea bargain offers was without merit, and [the PCRA court] informed [Appellant] of such in open court. After considering [Appellant's] remaining claims and conducting an independent review, on April 16, 2013, [the PCRA] court sent [Appellant] notice pursuant to Pa.R.Crim.P. 907 [] of its intent to deny and dismiss [Appellant's] petition. [Appellant] did not respond to [the PCRA court's Rule] 907 notice. On May 17, 2013, [the PCRA court] denied and dismissed [Appellant's] petition. On May 23, 2013, [Appellant filed a timely notice of appeal].

PCRA Court Opinion, 11/25/13, at 1-4 (internal citations omitted) (some internal capitalization and footnotes omitted).

Appellant raises two claims on appeal.

[1.] Did the [PCRA] court [] err in denying PCRA relief where the testimony at the evidentiary hearing established that trial counsel was ineffective for failing to fully communicate plea offers to Appellant and by advising him to go to trial rather than accept any of the favorable pleas offered by the Commonwealth?

[2.] Did the PCRA court err in not granting a full evidentiary hearing and in denying relief after Appellant and trial counsel testified and before all relevant testimony was heard?

Appellant's Brief at 7.

We will consider Appellant's claims in the order listed above.

We "review an order granting or denying PCRA relief to determine whether the PCRA court's decision is supported by evidence of record and whether its decision is free from legal error." *Commonwealth v. Liebel*, 825 A.2d 630, 632 (Pa. 2003).

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "[i]neffectiveness of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

Counsel is, however, presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:

> (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

*Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Id.*

Within the statement of questions involved section of Appellant's brief, Appellant first claims that counsel was ineffective for "for failing to fully communicate plea offers to Appellant and [for] advising [Appellant] to go to trial rather than accept any of the favorable pleas offered by the

Commonwealth." Appellant's Brief at 6-7. However, within the argument section of Appellant's brief, Appellant argues only that trial counsel was ineffective for failing to advise Appellant to accept the Commonwealth's only offer in the case: that Appellant plead guilty to murder and, in exchange, the Commonwealth would recommend that the trial court impose a 25 to 50 year term of imprisonment. According to Appellant, "[a]ny lawyer who failed to urge his client to take the proffered plea, however onerous, was not doing his or her job."[2] *Id.* at 27. We will consider the claim that Appellant has raised in the argument section of his brief. However, since Appellant has failed to develop the claim that counsel was ineffective "for failing to fully communicate plea offers to Appellant," that portion of Appellant's claim is waived on appeal. *Commonwealth v. Miller*, 721 A.2d 1121, 1124 (Pa. Super. 1998) ("We decline to become appellant's counsel. When issues are not properly raised and developed in briefs, when briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof.").

Appellant's claim that counsel was ineffective for failing to advise him to accept the Commonwealth's plea offer of 25 to 50 years in prison fails, as

_____

[2] We note that, in *Missouri v. Frye*, ___ U.S. ___, 132 S.Ct. 1399 (2012) and *Lafler v. Cooper*, ___ U.S. ___, 132 S.Ct. 1376 (2012), the United States Supreme Court held that defendants have a Sixth Amendment right to effective assistance of counsel during the plea process.

the claim is factually baseless. Indeed, during the PCRA hearing, Appellant's trial counsel testified that, prior to trial, he informed Appellant that Appellant, himself, was responsible for making the final decision as to whether to accept the Commonwealth's offer; however, counsel testified that he advised Appellant to "strongly consider the [Commonwealth's] offer." N.T. PCRA Hearing, 12/19/12, at 22-23. Appellant's trial counsel also testified that, when he provided Appellant with the above advice, he consulted with Appellant "about the relative merits of the Commonwealth's case in helping [Appellant to] decide how the offer compared to [Appellant's] chances at trial." *Id.* at 23. Specifically, Appellant's trial counsel testified that:

> [because] the Commonwealth's theory of the case was a robbery/murder . . . even if the evidence didn't rise to prove beyond a reasonable doubt [] first degree murder[,] that second degree murder was certainly something more viable to the Commonwealth, that either/or had a potential of a mandatory life sentence; that anything less than life is something that should be considered.

*Id.*

Moreover, during Appellant's own PCRA testimony, Appellant never testified that his trial counsel failed to properly consult with him as to the advisability of accepting the Commonwealth's offer of 25 to 50 years in prison. Instead, Appellant simply testified: "I rejected 25 to 50." *Id.* at 8.

Finally, after hearing the testimony in the case, the PCRA court concluded that "there had [] been one offer of not less than 25 years nor

more than 50 years [of] imprisonment, that trial counsel discussed the offer with [Appellant], and that [Appellant] rejected the offer." PCRA Court Opinion, 11/25/13, at 8.

Given the above testimony and the factual findings of the PCRA court, we conclude that Appellant's first claim on appeal is meritless. To be sure, the evidence of record demonstrates that Appellant's trial counsel consulted with Appellant and advised Appellant of the advantages and disadvantages of either accepting or rejecting the Commonwealth's offer. As such, the evidence of record demonstrates that trial counsel's assistance on this issue was within "an objective standard of reasonableness." Appellant's first claim on appeal fails.

For Appellant's second claim on appeal, Appellant claims that the "PCRA court err[ed] in not granting a full evidentiary hearing and in denying relief after Appellant and trial counsel testified and before all relevant testimony was heard." Appellant's Brief at 7. Yet, within the argument section of Appellant's brief, Appellant has failed to raise any specific argument on this issue. Instead, with respect to this issue, Appellant's brief consists solely of legal statements and quotations. *See* Appellant's Brief at 27-29. Therefore, Appellant's second claim on appeal is waived. ***Commonwealth v. Johnson***, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief fails to . . . develop the issue in any [] meaningful fashion capable of review, that claim is waived. It is not the obligation of [an appellate court] to formulate [a]ppellant's arguments for him.").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/25/2014