J-S13044-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                  :          PENNSYLVANIA
                                  :
            v.                        :
                                  :
                                  :
AXEL BARRETO                   :
                                  :
         Appellant        :   No. 1952 EDA 2020

Appeal from the PCRA Order Entered July 30, 2020
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004008-2012

BEFORE: OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:           **FILED JUNE 16, 2021**

Axel Barreto (Barreto) appeals *pro se* from the order of the Court of Common Pleas of Philadelphia County (PCRA court) dismissing his first petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. We affirm.

**I.**

On January 10, 2012, a group of seven teenage boys drove to Barreto's house to fight his 14-year-old stepson, Benny Torres (Torres). While they were parked in an alley near his house, Barreto walked up to their car and fired 11 shots, killing three of the boys (Joshua Soto, Javier Orlandi and Dante Lugo) and wounding another (Aaron Marrero). Barreto was arrested the next

_____

[*] Retired Senior Judge assigned to the Superior Court.

day and admitted to the police that he shot into the car. The Commonwealth charged him with multiple counts of murder and gave notice of its intent to seek the death penalty. In November 2013, a jury found him guilty of three counts of first-degree murder, four counts of attempted murder and one count of possession of an instrument of crime.[1] After the jury could not reach a unanimous decision on the death penalty, Barreto was sentenced to serve three consecutive life sentences on the murder convictions and concurrent terms of imprisonment on the remaining convictions. This Court affirmed the judgment of sentence and our Supreme Court denied allowance of appeal. *Commonwealth v. Barreto*, 1258 EDA 2014 (Pa. Super. 2015) (unpublished memorandum), *appeal denied*, 206 A.3d 489 (Pa. 2019).[2]

On May 24, 2019, Barreto filed this PCRA petition to allege that the Commonwealth violated *Brady v. Maryland*, 373 U.S. 83 (1963). He claimed that the Commonwealth withheld a cell phone that was found during a search of the victims' car. The police conducted the search pursuant to a warrant that was obtained by Philadelphia Police Detective Philip Nordo, a disgraced

---

[1] 18 Pa.C.S. §§ 2502(a), 901 and 907(b). The Commonwealth charged the offenses in two criminal informations. In this case (4008-2012), Barreto was charged with, among other offenses, the murders of Joshua Soto and Javier Orlandi. In the other case (4009-2012), Barreto was charged with the murder of Dante Lupo. Barreto has filed an appeal in that case at No. 1953 EDA 2020, which has also been assigned to this panel for disposition.

[2] Barreto's appeals were delayed several years because he had to file PCRA petitions to have his appellate rights reinstated.

detective who has been charged with several sexual offenses committed while he was a detective. According to Barreto, Detective Nordo never inventoried or submitted the cell phone into evidence, resulting in it never being admitted at trial.

PCRA counsel was appointed and filed a **Turner/Finley** letter,[3] finding that the **Brady** claim relating to the cell phone lacked merit. Counsel first noted that Detective Nordo's involvement was limited to the search warrant as he was not a witness at trial. Moreover, while the search warrant indicated that a cell phone was recovered, there was no information about who owned the cell phone. In any event, even if the cell phone belonged to one of the victims and contained threatening messages sent to Torres, the defense had those messages because Barreto's wife gave all the family's cell phones to the police.

PCRA counsel also addressed an issue that Barreto wanted raised: whether trial counsel was ineffective for not calling Torres as a witness at trial. Counsel did not believe that Barreto could show that the testimony's absence was so prejudicial as to have denied him a fair trial. Counsel explained that the impetus for the shooting was a feud between Torres and the group of

---

[3] **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1998); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1998).

teenagers. Torres, however, never left the house and did not see Barreto fire into the car. Thus, his testimony would not have helped Barreto's defense.

Finally, PCRA counsel recognized potential claims relating to two trial witnesses, Philadelphia Police Detective Nathan Williams and Officer Ohmarr Jenkins. Detective Williams was charged with tampering and unsworn falsification several years after the murders, while Officer Jenkins was alleged to have coerced a confession from a murder suspect, eventually leading to a civil suit. Neither Detective Williams' nor Officer Jenkins' misconduct, however, was related to Barreto's case. Thus, any claim involving the two detectives lacked merit.

After reviewing counsel's **Turner/Finley** letter, the PCRA court issued notice of its intent to dismiss the petition pursuant to Pa.R.Crim.P. 907. After Barreto timely responded to the notice, the PCRA court dismissed his petition without a hearing, following which Barreto filed this appeal.[4]

---

[4] The PCRA court dismissed the petition on July 30, 2020. Despite being dated August 22, 2020, Barreto's notice of appeal was not filed until October 16, 2020. It is well-settled that a notice of appeal must be filed within 30 days of the entry of the order being appealed. **See** Pa.R.A.P. 903(a); **Commonwealth v. Moir**, 766 A.2d 1253 (Pa. Super. 2000). Because Barreto's appeal is facially untimely, we directed Barreto to show cause why this appeal should not be quashed as untimely. Barreto responded that he timely sent his notice and that his *pro se* filings were being forwarded to his PCRA counsel. We note that the postmarked envelope attached to the notice of appeal is stamped as being received by the Office of Judicial Records on September 2, 2020, thus corroborating that he timely sent the notice of appeal.

**II.**

Though he lists several issues in his statement of questions involved, Barreto presents a single, unorganized argument that shifts between different claims for why he is entitled to relief.  Having reviewed his arguments, we discern three claims:  (1) his **Brady** claim related to the cell phone; (2) trial counsel not calling Torres as a witness; and (3) the involvement of Detective Williams and Officer Jenkins in his case.[5]

_____

We also note that the PCRA court's docket does not indicate the date that Barreto was served with the dismissal.  **See** Pa.R.Crim.P. 114(c)(2)(c) (docket entries "shall contain" the "date of service of the order"); Pa.R.Crim.P. 907(4) (an order dismissing a petition without a hearing "shall advise the defendant...of the time limits within which the appeal must be filed"); Pa.R.A.P. 108(a)(1), (d)(1) (the appeal period only begins running on the date the Clerk "mails or delivers copies of the order to the parties").  As a result, when there is a docketing failure or lack of notice, we will excuse an untimely appeal. **See Commonwealth v. Jerman**, 762 A.2d 366, 368 (Pa. Super. 2000) (finding a breakdown in the PCRA court and deeming the PCRA petitioner's appeal timely where Clerk of Courts failed to notify the petitioner of the order denying collateral relief).  Our review confirms that the Clerk of Courts failed to note on the docket when Barreto was served with the PCRA court's July 30, 2020 dismissal order.  Thus, we will not quash Barreto's appeal.

[5] This Court's standard of review regarding an order dismissing a PCRA petition is to ascertain whether "the determination of the PCRA court is supported by the evidence of record and is free of legal error.  The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Barndt**, 74 A.3d 185, 191-92 (Pa. Super. 2013) (citations omitted).  Further, "[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." **Commonwealth v. Maddrey**, 205 A.3d 323, 328 (Pa. Super. 2019) (citation omitted).

**A.**

First, Barreto reasserts his **Brady** claim related to the police finding a cell phone obtained by Detective Nordo pursuant to a search warrant. Though he can only speculate about the cell phone's contents, Barreto argues that the Commonwealth was obligated to turn over the cell phone to his defense attorney, as it may have contained exculpatory evidence. Barreto again emphasizes that Detective Nordo was not called as a witness at trial and was later criminally charged for offenses that he committed in his role as a detective. Barreto adds that the search warrant was approved by an assistant district attorney who was also later charged with committing criminal offenses.

Under **Brady**, the prosecution's failure to disclose exculpatory evidence violates a defendant's Fourteenth Amendment due process rights. **Commonwealth v. Ly**, 980 A.2d 61, 75 (Pa. 2009). To establish a **Brady** violation, the burden is on the defendant to plead and prove that "(1) the prosecutor has suppressed the evidence; (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant; and (3) the suppression prejudiced the defendant." **Commonwealth v. Carson**, 913 A.2d 220, 244 (Pa. 2006). In assessing prejudice under **Brady**, favorable evidence is material and constitutional error results from its suppression by the government if there is a reasonable probability that, had the Commonwealth disclosed the evidence, the result of the proceeding would have been different. **Commonwealth v. Weiss**, 81 A.3d 767, 783 (Pa.

2013). Reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. In determining if the petitioner has shown a reasonable probability of a different outcome, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. *Id*. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." *Commonwealth v. Chambers*, 807 A.2d 872, 887 (Pa. 2002).

In response to Barreto's argument, the Commonwealth relies on the PCRA court's analysis on this issue. That analysis was as follows:

> In essence, [Barreto] claims he was prejudiced at trial because former [Detective Nordo] did not testify; [Barreto] did not receive the cell phone recovered by Nordo; the cell phone recovered by Nordo contains *Brady* material; and the warrant used to recover the cell phone was approved by former Assistant District Attorney ("ADA"), Lynn Nichols.

> \* \* \*

> Initially, this claim fails because evidence regarding the cell phone was not unavailable. The defense was aware of the warrant for the cell phone and its recovery. Evidence from the cell phone was not used because it was irrelevant. [Barreto's] wife testified that she turned over all of the family's cell phones as well as a laptop computer. Any messages contained on the cell phone sought by Detective Nordo would only be relevant if they were sent to Benny Torres. Had messages been sent to Torres from that phone, Police would have had access to them on the family's phones and computer already in police custody. [Barreto] attempts to make it an issue simply because Nordo recovered the

- 7 -

cell phone and ADA Nichols signed the warrant for it-both of whom were fired from their positions and charged with crimes after the [Barreto's] conviction.

By way of background, Philip Nordo was fired from the Philadelphia Police Department prior to being arrested and charged with numerous counts of rape and related sexual offenses. Specifically, Philip Nordo is accused of having sexually assaulted a number of male witnesses and suspects during interrogations and intimidating them to remain silent. Several cases in which Nordo was involved have either been overturned or downgraded and several civil lawsuits are pending against him. Former ADA Lynn Nichols, on the other hand, was forced to resign from the Philadelphia District Attorney's Office because she obstructed justice by having her boyfriend's vehicle-which had been reported stolen-removed from a police database of stolen vehicles. When she discovered her boyfriend had cheated on her, Nichols then reported the vehicle stolen and had it towed by police. Nichols pled guilty to a misdemeanor for misusing her authority, and Nordo's case remains open. However, neither had any role in this investigation other than that which was just mentioned.

[Barreto's] claim is merely a bald assertion that Nordo's and Nichol's de minimis involvement is indicative that misconduct must have occurred, and therefore, there must be **Brady** information on the phone. That simply is not true. Therefore, this claim lacks merit.

PCRA Court Opinion (PCO), 12/15/20, at 17-18.

We agree with this analysis. We would add only that Barreto fails to explain how he was prejudiced, even if the cell phone was suppressed and would have been helpful to his defense. As noted earlier, Barreto admitted to the police that he fired multiple shots into the car. At trial, Barreto presented a justification defense and testified on his own behalf. Barreto admitted that he began firing as soon as he saw the car, even though the victims did not point a gun or say anything before he began firing. In fact, Barreto continued

to fire into the car even as it drove to get away. Barreto's version matched that of the four surviving victims, all of whom testified that Barreto walked up to the car and just began firing. Based on these facts, we fail to see how the contents of the cell phone, which presumably belonged to one of the victims, would have materially helped his defense. As the PCRA court observed, even if the cell phone contained threatening messages to Barreto's stepson, his trial counsel already had access to those messages because Barreto's wife gave the police all the family's cell phones for the investigation. For these reasons, Barreto's claim lacks merit.

Barreto also argues that PCRA counsel was ineffective for not raising trial counsel's ineffectiveness for not obtaining the cell phone during pretrial discovery.[6] The law presumes counsel has rendered effective assistance and the burden of demonstrating ineffectiveness rests with the petitioner. **See Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, the petitioner must plead and prove by a preponderance of the evidence that: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's

---

[6] Barreto preserved this claim in his response to the PCRA court's Rule 907 notice. **See Commonwealth v. Rigg**, 84 A.3d 1080, 1084 (Pa. Super. 2014) (petitioner must preserve challenge to PCRA counsel's effectiveness by responding to Rule 907 notice or raising issue while PCRA court retains jurisdiction).

ineffectiveness, there is a reasonable probability that the outcome of the challenged proceeding would have been different." ***Commonwealth v. Holt***, 175 A.3d 1014, 1018 (Pa. Super. 2017) (citation omitted). A petitioner must prove all three factors or the claim fails. ***See Commonwealth v. Baumhammers***, 92 A.3d 708, 719 (Pa. 2014). Additionally, where a petitioner asserts a layered claim of ineffectiveness, he must plead and prove each prong of the three-prong ineffectiveness test for each of the attorneys involved. ***See Commonwealth v. Chmiel***, 30 A.3d 1111, 1128 (Pa. 2011).

Even if trial counsel should have obtained the cell phone and lacked a reasonable basis for not doing so, Barreto cannot show that there is a reasonable probability that the outcome of his trial would have been different. There was no dispute that Barreto fired multiple rounds into the car, killing three teenagers and wounding another. The factual dispute centered on whether he was justified in doing so. Besides the victims' testimony rebutting this, Barreto's own testimony disproved any notion that he was justified in opening fire as soon as he came upon the car. This being the case, PCRA counsel was not ineffective for failing to file an amended petition raising trial counsel's effectiveness for not obtaining the cell phone.[7]

---

[7] Barreto also raises a one-paragraph layered ineffectiveness argument based on him receiving consecutive sentences for a single assault, arguing that his aggregate sentenced constituted a double jeopardy violation. However, "a single act which injures multiple victims can be the basis for multiple sentences." ***Commonwealth v. Frisbie***, 485 A.2d 1098, 1100 (Pa. 1984).

- 10 -

**B.**

Next, Barreto argues that he was prejudiced by trial counsel not calling Torres as a witness at trial, since the group of teenagers went to Barreto's house because of threats between them and Torres. To establish that counsel was ineffective for failing to call a witness, a petitioner must prove: "(1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial." *Commonwealth v. Treiber*, 121 A.3d 435, 463-64 (Pa. 2015) (citation omitted).

The PCRA court found that there was no contest that the first four prongs would be met, since (1) Torres existed, (2) he was available to testify, (3) trial counsel knew about him, and (4) he was willing to testify. That said, the PCRA court went on to find that Barreto could not establish the fifth prong of the claim: that the absence of Torres's testimony was prejudicial. In so finding, the PCRA court gave the following explanation:

> Initially, it should be noted that trial counsel purposefully did not call Torres as a defense witness because Torres' testimony would be harmful to the defense. N.T., 11/05/2013 at 159. In fact, a discussion was held on the record regarding the defense's decision not to call Torres. N.T., 11/5/13 at 155-59. The Commonwealth wanted a missing witness instruction since Torres was "ground zero" for this entire incident since it began with a feud between his group and [the victims'] group and Torres possessed the most information regarding how the event unfolded. Additionally, the defense unsuccessfully attempted to

keep out Benny Torres' Facebook posts which were threatening to the victims, as well as Torres' interactions with school officials, which would show that he refused to disclose the names of the individuals he was feuding with to allow the proper authorities to quell the situation before it escalated.

Most damming is that Benny Torres gave a statement to homicide detectives wherein he told detectives, that when his mother told [Barreto] that Benny told her the victims had a gun, [Barreto] responded "if they're going to act like men, I'm going to treat them like men." [Barreto] then left the house with a gun. Being that the victims were 14 and 15 years of age, this testimony would be extremely damaging to the defendant before a jury.

Based on the above statement by [Barreto], which would have been admitted had Torres taken the stand, counsel had a reasonable basis not to call Benny Torres as a defense witness. Instead, defense counsel chose to call [Barreto's wife] to establish that [Barreto] thought the victims may be armed, in order to establish that he was defending himself.

Furthermore, the evidence presented by the Commonwealth was overwhelming. The victims did not possess any weapons; they did not use their car as a weapon, and they were shot in the back. Even [Barreto] testified that he never saw anything that he believed to be a weapon; yet he started shooting at the car as soon as he saw it; and, as the car drove away, [Barreto] continued to shoot into the back of it.

PCO at 20-21.

We find this reasoning persuasive and, therefore, find that Barreto's claim that trial counsel was ineffective for not calling Torres to be meritless.

**C.**

Finally, Barreto claims that he had potential claims based on the involvement of Officers William and Jenkins, both of whom later had charges of misconduct. Barreto appears to assert that this misconduct would affect

their credibility. Again, however, the PCRA court concisely explained why this claim lacked any merit.

> Officer Nathan Williams was arrested in November of 2020 on charges of tampering with public records, unworn falsification to authorities, and related offenses. Williams is alleged to have used his authority and a police database to investigate a woman who had accused his cousin of stalking and harassment and then lying to superior officers about it. Officer Williams was called as a defense witness and his testimony established that [one of the victims] allowed him access to his Facebook in order to view the messages exchanged between [the victim] and Benny Torres on the day of the incident. N.T., 11/1/13 at 25-51. The allegations brought against Detective Williams, six years after [Barreto's] trial, could not have assisted defense counsel in impeaching Williams' credibility, as the allegations were not in existence at the time of [Barreto's] trial and had no nexus to his work as a homicide detective.

> As for the claim relating to Officer Jenkins, even if PCRA counsel were to have raised this claim, the Petitioner was not prejudiced since the Commonwealth could call Detective Henry Glenn, also present for the interrogation of the Petitioner's wife conducted by Officer Jenkins, to establish the same evidentiary points. N.T., 11/1/2013 at 211.

PCO at 15-16.

Besides the fact that Officer Williams's misconduct happened well after the trial, neither officer played a consequential role in the investigation. Thus, any attack on their credibility would have little effect on the outcome of the trial, since the ultimate issue at trial was whether Barreto was justified in shooting at the teenagers in the car. As a result, any potential claim involving the credibility of Detective Williams or Officer Jenkins would be meritless.

Order affirmed.

- 13 -

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 6/16/2021*