J-S17026-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ERIK THOMPSON :
:
Appellant : No. 1390 EDA 2021

Appeal from the PCRA Order Entered June 11, 2021
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0004607-2017

BEFORE: BOWES, J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY LAZARUS, J.: **FILED AUGUST 22, 2022**

Erik Thompson appeals from the order, entered in the Court of Common Pleas of Philadelphia County, dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Upon our review, we affirm.

At trial, Daniel Broadwater ("Victim") testified that, on August 28, 2016, at approximately 2:00 a.m., Victim, his cousin, Houston Beers, and his friend, Ricky Smosny, went to Steve's Steaks on Comly Road in Philadelphia to get cheesesteaks. N.T. Trial, 12/10/18, at 18-20. Victim rode his Harley Davidson motorcycle, and Beers and Smosny followed in a car. *Id.* at 20. As the three men sat outside of the establishment, a woman sitting nearby "kept chiming in to [the] conversation" among Victim and his companions. *Id.* at 21. Victim testified that:

> I was trying to defer her [sic] and get her away from me. I made a wise remark that she really wasn't that pretty and to leave me alone, this and that. I was not interested in her. That is when her boyfriend or friend came out and was hostile, all up in my face, trying to start an incident, where I verbally backed him down [and] avoided any physical altercation at that point.

*Id.* Victim identified the woman's boyfriend as Thompson. Victim testified he told Thompson that he and his companions did not want to fight, and they both backed down. *Id.* at 22. Thereafter, Thompson and the woman went back inside the restaurant and Victim got on his motorcycle and prepared to leave. *Id.*

Victim testified that Thompson and his friend, co-defendant Anthony Gargano, exited Steve's Steaks to make contact with Victim as he was leaving. Victim stated:

> They [were] trying to pull me off my Harley. Trying to rip me off of the bike and I'm swerving. I come to the light and that is when I start to turn back. . . . Thompson was the lead aggressor at that time, trying to pull me off the bike. . . . They were trying to get me off the Harley. . . . I was trying to avoid all contact with them, so when I turned around, they were still chasing me.

*Id.* at 44-45. Victim pulled over in a parking lot next to Steve's Steaks. He testified, "I was trying to verbally dispute it. I was trying to solve it without any conflict. And they were coming at me like a brick house. As soon as I got the bike down, I could not even put the kickstand down before they were already right there." *Id.* at 53. Victim was then beaten by Thompson and several others. *Id.* at 54-55. Victim stated, "I was just holding [my handgun] in my hand. If I had to use it, I was going to use it because there were three individuals stomping me into the ground at the time. I was trying to avoid

using it." *Id.* at 61.   Victim informed the men beating him that he had a weapon.  *Id.*

Victim was able to retreat to his cousin's car.  However, Victim witnessed his motorcycle getting pushed over and urinated on and a second physical altercation began.  *Id.* at 62-63.  As Gargano was approaching him, Victim fired his gun one time, shooting Gargano in the face.  *Id.* at 70-71, 73. Thompson and the men then beat Victim unconscious, resulting in a broken wrist, broken nose, collapsed lung, and several facial lacerations.  *Id.* at 74, 257.   The entire incident was captured on surveillance video from Steve's Steaks, the neighboring Planned Parenthood, and a warehouse next to the Planned Parenthood.  *Id.* at 65-67.

Following a nonjury trial, on December 10, 2018, the trial court convicted Thompson of aggravated assault, conspiracy, simple assault, and recklessly endangering another person.  N.T. Trial, 12/10/18, at 350.   Prior to sentencing, Thompson filed two motions for extraordinary relief,[1] both of which were denied.  On August 8, 2019, the court sentenced Thompson to an

_____

[1] In the first motion, Thompson asked the court to vacate his convictions for aggravated assault and conspiracy to commit aggravated assault, "so as to create a verdict that is consistent with the facts of the case, consistent between and amongst all three defendants[,] and consistent with the manner in which the Honorable Judge Dugan held the matters for trial."  Motion for Extraordinary Relief, 12/17/18, at [2].  The second motion requested a new trial on the basis of after-discovered evidence.  Specifically, Thompson claimed that video evidence came to the attention of Thompson and his counsel which cast doubt on the credibility of the complainant.  *See* Motion for Extraordinary Relief, 1/28/19, at 1.

aggregate term of 11½ to 23 months of house arrest, followed by two years of probation. Thompson did not file post-sentence motions or a direct appeal.

On September 3, 2020, Thompson filed a timely, counseled PCRA petition, alleging ineffectiveness of trial counsel for, *inter alia*, failing to: (1) review and present certain video evidence at trial; and (2) seek to correct an illegal sentence stemming from the trial court's failure to merge his convictions for aggravated assault and simple assault for purposes of sentencing. The PCRA court held an evidentiary hearing on June 11, 2020, after which it granted relief on the sentencing claim and denied Thompson's remaining ineffectiveness claims. Thompson filed a timely notice of appeal, followed by a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He raises the following claim for our review:

> Did the PCRA court err in dismissing [Thompson's] PCRA petition because trial counsel was ineffective for not ensuring that all video footage of the underlying incident was presented at trial[, where Thompson] was prejudiced because[: (1)] complainant was shown on the video to be the initial aggressor throughout[; (2) Thompson's] unarmed codefendant [] was shot in the face at close range[; and (3)] there is no support in the record to preserve [Thompson's] convictions?

Brief of Appellant, at 4 (unnecessary capitalization omitted).

We begin by noting our standard and scope of review:

> This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record.

- 4 -

However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

***Commonwealth v. Dozier***, 208 A.3d 1101, 1103 (Pa. Super. 2019).

Thompson alleges the ineffectiveness of his trial counsel. Counsel is presumed to be effective, and "the burden of demonstrating ineffectiveness rests on [the] appellant." ***Commonwealth v. Rivera***, 10 A.3d 1276, 1279 (Pa. Super. 2010).

To satisfy this burden, an appellant must plead and prove by a preponderance of the evidence that[:] (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness there is a reasonable probability that the outcome of the challenged proceeding would have been different. Failure to satisfy any prong of the test will result in rejection of the appellant's ineffective assistance of counsel claim.

***Commonwealth v. Holt***, 175 A.3d 1014, 1018 (Pa. Super. 2017) (internal citations omitted).

Here, Thompson claims that trial counsel was ineffective for failing to present the full video footage of the incident at trial. Thompson argues there is a reasonable possibility that the outcome of the trial would have been different had trial counsel utilized the full footage. Brief of Appellant, at 13. Thompson contends he was prejudiced because, when viewed in its entirety, the surveillance video shows Victim to be the aggressor and shows Thompson acted appropriately by restraining the Victim after Victim shot Thompson's friend. *Id.* at 18, 22. Specifically, Thompson argues that portions of video

not played at trial show Victim pointing his gun at the ground before the altercation, Victim being aggressive toward Thompson's girlfriend, and Victim having ample opportunity to retreat.[2] **Id.** 19-22. Thompson is entitled to no relief.

To establish prejudice, Thompson must prove actual prejudice, defined as "a reasonable probability that, but for counsel's lapse, the result of the . . . proceeding would have been different." **Strickland v. Washington**, 466 U.S. 668 (1984).

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. . . . Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Ultimately, a reviewing court must question the reliability of the proceedings and ask whether the result of the particular proceeding [was] unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.

**Commonwealth v. Crispell**, 193 A.3d 919, 932 (Pa. Super. 2018).

Here, we agree with the PCRA court that Thompson did not demonstrate actual prejudice because the video presented at the evidentiary hearing would not have changed the outcome of the trial. The unshown footage does not alter the undisputed trial evidence that Victim was outnumbered in the altercation by Thompson and his friends, that Victim was repeatedly beaten

---

[2] Thompson alleges Victim could have abandoned the altercation at two points—first, when Victim exited Steve's Steaks on his motorcycle but ended up turning around on Comly Road after Thompson was following him on foot, and second, when Victim retreated to his cousin's car after the altercation began. **Id.** at 21-22.

until unconscious, and that Victim tried to resolve the issue verbally. Further, Victim was vigorously cross-examined at trial as to why he returned to the scene after initially departing on his motorcycle, during which Victim admitted he could have safely left the scene. *See* N.T. Trial, 12/10/18, 106-12. As the Commonwealth aptly notes in its brief, "the portion of video that defendant claimed was such a bombshell at the post-conviction hearing simply re-plowed ground that was undisputed at trial." Brief of Appellee, at 9. In view of the totality of the evidence, the omitted video footage does not alter the undisputed evidence presented at trial that Victim was not the aggressor.

In light of the foregoing, Thompson has failed to demonstrate a reasonable probability that the outcome of trial would have been different had the video evidence in question been presented to the jury. *Holt, supra*. Accordingly, Thompson's ineffectiveness of counsel claim fails.

Order affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/22/2022