J-S58029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LEON CHARLES TADYCH, | |
| Appellant | No. 90 MDA 2015 |

Appeal from the PCRA Order of January 5, 2015
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0000471-2013,
CP-36-CR-0001604-2013

BEFORE:  GANTMAN, P.J., OLSON AND PLATT,* JJ.

MEMORANDUM BY OLSON, J.:                    **FILED NOVEMBER 25, 2015**

Appellant, Leon Charles Tadych, appeals from the order entered on January 5, 2015, denying him relief under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The Commonwealth charged Appellant with a number of offenses, including three counts of involuntary deviate sexual intercourse, three counts of corruption of minors, and one count each of statutory sexual assault, unlawful contact with a minor, indecent assault, and intimidation of a witness.[1]  The affidavit of probable cause that was attached to the criminal complaint was sworn to by Sergeant Jeffrey Margevich of the Millersville

---

[1]  18 Pa.C.S.A. §§ 3123(a)(7), 6301(a)(1)(ii), 3122.1(b), 6318(a)(1), 3126(a)(8), and 4952(a)(3), respectively.

* Retired Senior Judge assigned to the Superior Court.

Borough Police Department and, within the affidavit, the following was averred:

> 1.) On July 24, 2012, at approximately [11:27 p.m., Officer] Burkholder of [the] Millersville Borough Police Dep[artment] was on duty in a marked cruiser . . . when [he was] approached . . . by a male. . . . [The male] requested [Officer Burkholder's] assistance . . . and explained that he and his roommate just came across two young girls at the Turkey Hill . . . and the girls told them that they were being chased by a male in a truck who was the father of one of the young females.
>
> 2.) [Officer] Burkholder . . . located the young girls inside [the male's] apartment. . . . The young girls were identified to be [A.D., who was born in 1997,] and L.T. (age 14 or 15). L.T.'s father [was Appellant, and Appellant was] reportedly chasing the girls. . . .
>
> 3.) L.T. further explained that A.D. was to be spending the night at her house but she and A.D. had left L.T.'s house after an argument occurred between [L.T.'s] parents. [Officer] Burkholder questioned the girls further about what was going on with [Appellant] and was told that [Appellant] was driving around looking for them and they did not want to go back to the house. Furthermore, [Appellant] reportedly had a crush on the juvenile female A.D.
>
> . . .
>
> 5.) [Officer] Burkholder took A.D. home to her house and spoke to her father about the incident.
>
> . . .
>
> 8.) On October 23, 2012, [D.T.,] the wife of [Appellant,] came to the police station. She was extremely distraught and upset and crying and having a hard time explaining things to [Sergeant Margevich]. She stated that [Appellant] did tell her he was in love with the juvenile female A.D. [Appellant's wife] stated that A.D. is practically living at her house. To date [she] had not been able to catch

[Appellant] and A.D. doing anything sexual, but that she knew that A.D. had been sleeping at the Tadych residence . . . almost every night. [Appellant's wife] informed [Sergeant Margevich] that she and [Appellant] no longer sleep together and that [Appellant] has been sleeping in the living room with A.D., and that he is alone there, with A.D., when A.D. sleeps over[.] When [Appellant's wife] awakens in the morning in her room, and goes into the living room, she finds A.D. sleeping there. [Appellant's wife] asked if there was anything that could be done about this situation.

9.) On November 20, 2012, [Sergeant Margevich] placed a hidden video camera for video recording only (no audio) in the living room of the Tadych residence. . . .[2] On that same date [Sergeant Margevich] also obtained access to a location near the residence to set up receiving equipment to monitor and record the video transmission from the residence.

10.) [Sergeant Margevich] periodically monitored/checked the recorded videos and observed numerous incidents of indecent contact where [Appellant] touched the buttocks of the juvenile female A.D., between 11/20/12 and 12/04/12, at the Tadych residence. . . .

11.) On December [6], 2012, . . . [Appellant] was interviewed by Chief Rochat of [the Millersville Borough Police Department] and [Sergeant Margevich]. [Appellant] during this interview confessed to committing anal intercourse, oral intercourse[,] and vaginal intercourse upon the victim between October 2012 and December 2012.

---

[2] Within Appellant's later-filed amended PCRA petition, Appellant acknowledged that, on or about November 20, 2012, his then-wife executed a "Consent for Video Transmission or Recording Within a Private Residence," wherein she gave her "consent to law enforcement authorities to allow them to place a video camera device within the living room of [her] residence, to transmit and/or record a video depiction of events that take place within that area." Appellant's Amended PCRA Petition, 6/20/14, at 2; Consent for Video Transmission or Recording Within a Private Residence, 11/20/12, at 1.

12.) Based on the facts and circumstances set forth above, your Affiant respectfully requests that a warrant be issued for [Appellant]. . . .

Affidavit of Probable Cause, 12/11/12, at 1-2.

Following Appellant's arrest, assistant public defender Dennis C. Dougherty, Esquire, ("Attorney Dougherty") was appointed to represent Appellant.

On April 17, 2013, Appellant filed a pre-trial motion wherein he claimed that "the police recording taken from inside his home, of his person, and of his actions, constitute[s] an unlawful search of his property and person." Appellant's Pre-Trial Motion, 4/17/13, at 6. Further, Appellant claimed that his later confession to the police and consent to search his property were the "result of [him] being confronted with [the] illegally obtained [video] evidence." *Id.* at 6-7. Appellant thus requested that the trial court suppress both the illegally obtained video evidence and all evidence that was derived from the illegal search, including his later confession and the evidence obtained as a result of his invalid consent. *Id.* at 5-8.

However, prior to the pre-trial motion hearing, Appellant and the Commonwealth entered into an agreement where, in exchange for Appellant's plea of guilty to all charges, the Commonwealth would agree to recommend that Appellant serve an aggregate term of 12 to 24 years in prison. *See* N.T. Guilty Plea and Sentencing, 6/6/13, at 2. On June 6, 2013, Appellant pleaded guilty to all charges and, on that same day, the trial

court sentenced Appellant to serve the negotiated, aggregate term of 12 to 24 years in prison.  *Id.* at 2-17.

On February 4, 2014, Appellant filed a timely, *pro se* PCRA petition and the PCRA court appointed new counsel to represent Appellant. Appointed counsel then filed an amended PCRA petition on Appellant's behalf.  Within the amended petition, Appellant claimed that plea counsel was ineffective when he advised Appellant to abandon the meritorious suppression motion and enter a negotiated guilty plea in the case. Appellant's Amended PCRA Petition, 6/20/14, at 1-7.

On September 24, 2014, the PCRA court held a hearing on Appellant's petition, during which time Appellant's plea counsel – Attorney Dougherty and Appellant testified.[3]  Attorney Dougherty testified that he discussed the suppression issue with Appellant "about three or four times" and, during these discussions, he advised Appellant:

> that it was actually a very interesting suppression issue. Very rarely do I come across a case where the case law's relatively gray and, you know, you have the opportunity to have a legal precedent set.
>
> So I did tell him that the suppression issue basically had some validity, or at least an argument to be made, but

---

[3] At the beginning of the PCRA hearing, the Commonwealth entered a limited concession.  In particular, the Commonwealth conceded that Appellant's pre-trial suppression motion "[wa]s not a frivolous motion."  N.T. PCRA Hearing, 9/24/14, at 9-10.  However, the Commonwealth specifically did not concede that the trial court "would have [] granted" the motion, if the motion had been presented to the trial court.  *Id.*

essentially I wasn't exactly sure how the [trial c]ourt was going to rule on that motion and that motion was a bargaining chip, to some extent.

N.T. PCRA Hearing, 9/24/14, at 15.

Attorney Dougherty also testified that, after the Commonwealth tendered its plea offer, Attorney Dougherty advised Appellant of the risks associated with litigating the suppression motion:

I told him that it was quite possible that you – you could win the battle and lose the war, if you will; that I wasn't sure how the [c]ourt was going to rule on the suppression motion but there was also a possibility that if he . . . won the suppression motion . . . that a jury could still convict him, potentially, based on the [victim's] testimony as well as other letters that he had written to, I guess, his daughter.

. . .

I thought, you know, when I looked at the suppression issue [in] this case, I thought he had a very decent suppression issue regarding his statement, you know. But given other letters that he had written, I guess, to his daughter about his relationship with this young lady[,] and the [victim's] testimony that had occurred, I thought that it would be possible for him to win the suppression and still lose at trial.

. . .

I [told] him . . . that, if the suppression motion was denied, we'd likely lose our deal or any leverage we had for a deal. If it was granted, we'd still go to trial, and it would be up to a jury to decide what had occurred.

*Id.* at 16-17 and 21.

Further, Attorney Dougherty testified during the PCRA hearing that, regardless of the merits of the suppression issue, other potential witnesses

against Appellant included Appellant's former wife and Appellant's children. *Id.* at 24.

Attorney Dougherty testified that, after providing Appellant with the above advice, Appellant ultimately decided to accept the Commonwealth's offer and enter a negotiated guilty plea to the charges. *Id.* at 21.

Appellant also testified during the PCRA hearing. Appellant testified that, prior to his plea, Attorney Dougherty advised him that "even if [Appellant] won [the suppression issue, Appellant] could still lose at trial" and that, because of the letters Appellant wrote to his daughter and the testimony of the victim, Appellant had "no chance" if the case went to trial. *Id.* at 35-36. Appellant testified that he pleaded guilty because Attorney Dougherty "told [him] that [he] didn't have a chance at trial." *Id.* at 36.

The PCRA court denied Appellant post-conviction collateral relief on January 5, 2015 and Appellant filed a timely notice of appeal. Appellant raises one claim on appeal:

> Whether the [PCRA] court erred in denying [Appellant's] amended PCRA petition when [Appellant] was denied his right to the effective assistance of counsel during the guilty plea process?

Appellant's Brief at 4 (some internal capitalization omitted).

As we have stated:

> [t]his Court's standard of review regarding an order dismissing a petition under the PCRA is whether the determination of the PCRA court is supported by evidence of record and is free of legal error. In evaluating a PCRA court's decision, our scope of review is limited to the

- 7 -

findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level. We may affirm a PCRA court's decision on any grounds if it is supported by the record.

*Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010) (internal citations omitted).

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "[i]neffectiveness of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

Counsel is, however, presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:

(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

*Commonwealth v. Fulton*, 830 A.2d 567, 572 (Pa. 2003). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Id.* Further, with respect to the second ineffectiveness prong, we

note that an attorney's "chosen strategy will not be found to have lacked a reasonable basis unless it is proven that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009) (internal quotations omitted).

We also note that "[a] criminal defendant has the right to effective counsel during a plea process as well as during trial." *Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa. Super. 2002). Yet, where the ineffectiveness of counsel is claimed in connection with the entry of a guilty plea, a petitioner may only obtain relief where "counsel's deficient stewardship resulted in a manifest injustice, for example, by facilitating [the] entry of an unknowing, involuntary, or unintelligent plea." *Commonwealth v. Moser*, 921 A.2d 526, 530 n.3 (Pa. Super. 2007) (*en banc*) (internal citations and quotations omitted). As we have explained:

> once a defendant has entered a plea of guilty, it is presumed that he was aware of what he was doing, and the burden of proving involuntariness is upon him. Therefore, where the record clearly demonstrates that a guilty plea colloquy was conducted, during which it became evident that the defendant understood the nature of the charges against him, the voluntariness of the plea is established.

*Commonwealth v. Stork*, 737 A.2d 789, 791 (Pa. Super. 1999) (internal quotations, citations, and corrections omitted), *quoting Commonwealth v. Myers*, 642 A.2d 1103, 1105 (Pa. Super. 1994). "To prove prejudice, [an] appellant must prove he would not have [pleaded] guilty and would have

achieved a better outcome at trial." ***Commonwealth v. Fears***, 86 A.3d 795 (Pa. 2014) (internal quotations and citations omitted).

Within Appellant's brief to this Court, Appellant claims that he is entitled to relief because:

> [Appellant] would not have pleaded guilty but for the fact that [Attorney Dougherty] advised him that he had no chance at trial even if the suppression issue was successful. If the issue had been litigated then the great deal of the Commonwealth's evidence would have been suppressed and the Commonwealth ultimately would have not been able to meet its burden of proof.

Appellant's Brief at 10.

As the PCRA court ably explained, Appellant's claim fails because Attorney Dougherty had a reasonable basis for advising Appellant to take the Commonwealth's offer:

> [Attorney Dougherty] consistently testified at the PCRA [] hearing that he discussed the suppression issue with [Appellant] on three or four occasions. In addition, [Attorney Dougherty testified] "I did tell him that the suppression issue basically had some validity, or at least an argument to be made, but essentially I wasn't exactly sure how the [trial c]ourt was going to rule on that motion and that motion was a bargaining chip, to some extent." [N.T. PCRA Hearing, 9/24/14, at 15.] Further, [Attorney Dougherty] [] testified that he advised [Appellant] that:
>
> > you could win the battle and lose the war . . . that I wasn't sure how the court was going to rule on the suppression motion but there was also a possibility that if he . . . won the suppression motion . . . that a jury could still convict him, potentially, based on the [victim's] testimony as well as other letters that he had written to, I guess, his daughter.
>
> [***Id.*** at 16-17.]

- 10 -

> [Attorney Dougherty] further explained that he discussed with [Appellant] that "if the suppression motion was denied, we'd likely lose our deal or any leverage we had for a deal. If granted, we'd still go to trial, and it would be up to a jury to decide what had occurred." [**Id.** at 21.] Therefore, [Attorney Dougherty] stated that if the suppression motion was denied, [Appellant] would lose his offer of 12 to 24 years' incarceration and any leverage that he had for an offer at all. Additionally, based on the fact that there was other evidence [that would not have been suppressed in this case – such as Appellant's inculpatory letters to his daughter and the incriminating testimony from the victim, Appellant's ex-wife, and Appellant's children – Attorney Dougherty reasonably] believed that the Commonwealth could potentially still prove its case [even if the suppression motion were granted].
>
> . . .
>
> The [PCRA] court finds that [Attorney Dougherty] had a reasonable strategic basis regarding his decision to not pursue the motion to suppress [and to advise Appellant to plead guilty. Attorney Dougherty] stated that the motion to suppress provided a bargaining chip to a negotiated plea agreement with the Commonwealth, which would be revoked if the suppression motion was litigated. In addition, [Attorney Dougherty] understood that the Commonwealth had additional evidence and testimony from [Appellant's] ex-wife, children, and the victim. So, even if [Appellant] would have won the suppression motion, the jury could have found [Appellant] guilty based on the other unsuppressed evidence.

PCRA Court Opinion, 1/5/15, at 4-5 and 6 (internal emphasis omitted) (some internal citations and capitalization omitted).

We agree with the PCRA court's cogent analysis and conclude that the court did not err when it denied Appellant's PCRA petition, as Attorney

Dougherty's advice to Appellant and proposed strategy in this case was valid, reasonable, and true. Appellant's claim of error thus fails.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/25/2015