J-S17020-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEONARD WEST | : | |
| | : | |
| Appellant | : | No. 3823 EDA 2017 |

Appeal from the PCRA Order November 9, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0011936-2009

BEFORE:  BENDER, P.J.E., OLSON, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OLSON, J.:                    **FILED MAY 08, 2019**

Appellant, Leonard West, appeals from the order entered on November 9, 2017, denying him relief on his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The trial court provided us with an able summary of the evidence presented during Appellant's trial:

> [C.M. (hereinafter "the Victim")] identified [Appellant] in the courtroom and testified that he and [Appellant] had grown up together as children, as adults, and as friends living a block apart.  He testified that on April 18, 2009, at approximately 8:22 p.m., while walking towards Mifflin Street, he encountered [Appellant] at or near the intersection of Hemberger and Mifflin Streets in the City of Philadelphia and exchanged greetings.  When they were approximately [four to six] feet apart, he saw [Appellant] "reaching behind his back with his right arm and I tried to get out of his direct line."  [The Victim] testified that, as he turned to his right, two shots hit him in the chest and a third shot hit him in the mouth as he fell to the ground.  While on the ground he was shot in the thigh and twice more in the right shoulder.  He

testified that the shots came from directly in front of him where [Appellant] was standing at the time. As a result of the shooting, [the Victim] now has a bullet lodged in his spine and is confined to a wheelchair.

After being shot, [the Victim] testified that someone came to his aid and called police. While being transported to the hospital, he was questioned by Detective Tolliver and identified [Appellant] by his nickname, "Twin," as his assailant.

[The Victim] testified that although "I didn't *per se* see the gun but when he stuck his right hand behind his back, I knew what was coming next." He further testified that on seeing [Appellant's] actions, that "I knew that the next action, it wasn't going to be anything nice. Okay? I knew that he was reaching behind his back for a gun. I know that."

Trial Court Opinion, 5/16/11, at 4-5 (citations omitted).

The jury found Appellant guilty of attempted murder, aggravated assault, possession of a firearm by a prohibited person, firearms not to be carried without a license, carrying firearms on the public streets of Philadelphia, and possessing instruments of crime.[1] On January 26, 2011, the trial court sentenced Appellant to serve an aggregate term of 33 ½ to 67 years in prison for his convictions. We affirmed Appellant's judgment of sentence on December 29, 2011 and the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal on July 10, 2012. *Commonwealth v. West*, 40 A.3d 206 (Pa. Super. 2011) (unpublished memorandum) at 1-3, *appeal denied*, 48 A.3d 1249 (Pa. 2012).

---

[1] 18 Pa.C.S.A. §§ 901(a) (and 2502(a)), 2702(a), 6105(a)(1), 6106(a)(1), 6108, and 907(a), respectively.

- 2 -

On August 9, 2012, Appellant filed the current, timely, *pro se* PCRA petition. Within this petition, Appellant claimed:

> Ineffective assistance of trial counsel, for failing to conduct a pre-trial investigation, and failing to obtain experts in the field of ballistic, which could have overcome the testimony of the Commonwealth's witness, and ineffective assistance of counsel for failing to obtain medical records of the [Victim] which would have shown that [the Victim] was not functioning properly and was making a number of different stories up.

Appellant's *Pro Se* PCRA Petition, 8/9/12, at 3 (some capitalization omitted).

The PCRA court appointed counsel to represent Appellant during the proceedings and, on March 3, 2015, counsel filed an amended petition on Appellant's behalf. The amended petition listed the following claims for relief:

> [1.] Trial counsel failed to obtain the [Victim's] medical records;
>
> [2.] Trial counsel failed to obtain a ballistic expert to track the path of the bullets and show they were fired from different areas;
>
> [3.] Trial counsel failed to locate eye witnesses;
>
> [4.] Trial counsel failed to present alibi evidence;
>
> [5.] Trial counsel failed to obtain surveillance recordings[;]
>
> . . .
>
> [6.] Counsel was ineffective for failing to file a post verdict motion that the verdict was against the weight of the evidence[;]
>
> [7.] Counsel was ineffective for failing to properly have an investigator investigate the case and obtain expert witnesses[;]

- 3 -

[8.] Counsel was ineffective for failing to interview and present a witness[;]

[9.] Appellate counsel was ineffective for failing to properly represent [Appellant].

Appellant's Amended PCRA Petition, 3/3/15, at 2-3.

Appellant attached a written statement to his petition, where he declared:

I told my lawyer that I was at my girlfriend house at the time of the shooting. Her name is Benita Dixon. . . .

My counsel knew about her, because I gave my counsel her name, address, and phone number.

My alibi witness (Benita) left messages on my lawyer answer machine, stating that she will testify on my behalf. My counsel said that it will not be a wise choice for [her to] testify for me at trial. Because the jury is going to believe that Benita will defend her boyfriend for all purpose.

Appellant's Statement, 3/3/15, attached as "Appendix A" to Appellant's Amended PCRA Petition, at 1 (paragraph numbering omitted).

On November 9, 2017, the PCRA court held a hearing on Appellant's petition. The hearing was limited to Appellant's claim that his trial counsel was ineffective for failing to present his girlfriend, Benita Dixon, as an alibi witness at trial. N.T. PCRA Hearing, 11/9/17, at 7. During this hearing, Appellant, Benita Dixon, and Appellant's trial counsel, Constance Clarke, Esquire (hereinafter "Attorney Clarke"), testified.

Appellant testified that Benita Dixon is his current girlfriend and that she was his girlfriend at the time of the shooting. *Id.* at 14. He testified that, at

- 4 -

the time of the shooting, he was with Ms. Dixon, at her residence, approximately six or seven blocks away from the scene of the crime. *Id.* at 11-12. As Appellant testified, he informed Attorney Clarke about Ms. Dixon and he "wanted [Attorney Clarke] to interview [Ms. Dixon], to question her, anything in th[e] ordinary." *Id.* at 13.

Benita Dixon testified that, at the time of the shooting, Appellant was sitting in her house while she was making their dinner. *Id.* at 21. She testified that, after they ate, she and Appellant "stayed up in [her] room watching TV, watching movies." *Id.* As Ms. Dixon also testified, she attempted to contact Attorney Clarke prior to Appellant's trial, but Attorney Clarke did not return her telephone calls. *Id.* at 22.

Attorney Clarke testified that, prior to Appellant's trial, she knew of Ms. Dixon and knew that Ms. Dixon was a purported alibi witness. *Id.* at 32. Thus, Attorney Clarke assigned an investigator to speak with Ms. Dixon. *Id.* at 30. However, Attorney Clarke testified, she did not learn until later that the investigator was suffering from Alzheimer's disease and had "never talked to [Ms. Dixon]." *Id.* Attorney Clarke testified: "I'm the attorney, I should have interviewed [Ms. Dixon] myself, not relied on an investigator. So it's my fault." *Id.*

Nevertheless, Attorney Clarke testified that, prior to trial, she knew of the potential for an alibi defense and knew that the purported alibi witness was Appellant's girlfriend. *Id.* at 32. She testified that, prior to trial, she and Appellant "had numerous discussions about what the best possible strategy

was for this case. It changed from time to time. He was going to plead and then we were going to bring the alibi witness in, then we weren't going to, and it was a long time too . . . there was a 600 motion. . . . But there were numerous discussions and numerous theories that went back and forth." **Id.** at 33-34. She testified that, ultimately, she decided against the use of an alibi defense because "I had concerns about an alibi witness, what could happen with an alibi witness. I thought that our defense was a really strong defense based on the evidence we had." **Id.** at 34.

Attorney Clarke testified that, "[i]n hindsight," her defense strategy was "not correct," as the trial court did not admit the evidence that Attorney Clarke believed was necessary to effectively mount her particular defense.[2] **Id.** at 35. Moreover, Attorney Clarke testified that she "shouldn't have pressed [Appellant] to go to trial" and that she should have, instead, pressured

_____

[2] Attorney Clarke's PCRA hearing testimony was, at times, difficult to understand. She testified that, going into trial, her anticipated defense was:

> [the Victim] sold drugs for everybody. He had encounters with the Wests, with [Appellant's] brother. He was like a little bit of a thief. So he had a lot of people that were after him. At this particular time, this Asian gang was really strong in this neighborhood and they were after him. We had, again, photographs of the people we believed to be the gang. We have photographs of them. You know, the victim selling drugs for them and the evidence was not allowed into the trial.

N.T. PCRA Hearing, 11/9/17, at 33.

- 6 -

Appellant to accept the Commonwealth's offer of seven-and-a-half to 15 years in prison. *Id.* at 30 and 33.

At the conclusion of the hearing, the PCRA court denied Appellant post-conviction collateral relief. *Id.* at 48. As the PCRA court explained:

> Let's cut to the chase. I just don't believe [Attorney Clarke]. I just absolutely do not believe her. . . .
>
> I think at the heart of [Attorney Clarke's] testimony is her regret that she didn't hit [Appellant] over the head and convince him to take the [seven-and-a-half] to 15 plea and instead went to trial thinking she had the Asian defense or some other defense and she was wrong. Lawyers make strategy calls all the time. It was her strategy call and she feels bad about it.

*Id.* at 43-44.

Appellant filed a timely notice of appeal. Appellant numbers four claims on appeal:[3]

_____

[3] The PCRA court ordered Appellant to file and serve a concise statement of errors complained of on appeal, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant filed a timely Rule 1925(b) statement and, within the statement, Appellant listed the following claims:

> 1. The court was in error in not granting [Appellant's] PCRA [petition] following the evidentiary hearing. [Appellant's] attorney testified that she was ineffective for failing to interview and call to testify an alibi witness. Additionally the alibi witness testified that she was never interviewed or called to testify and [Appellant] testified he asked counsel to interview and call the alibi witness.
>
> 2. The court was in error in failing to grant the PCRA [petition] on the additional issues listed and explained in full in the amended PCRA [petition] filed by PCRA counsel.

[1.] Counsel was ineffective for failing to interview and present a witness.

[2.] Counsel was ineffective for failing to file a post verdict motion that the verdict was against the weight of the evidence.

[3.] Trial counsel was ineffective by failing to properly have an investigator investigate the case and obtain expert witnesses.

[4.] Appellate counsel was ineffective for failing to properly represent Appellant.

Appellant's Brief at 16-23 (some capitalization omitted).[4]

Our Supreme Court has held:

Under the applicable standard of review, we must determine whether the ruling of the PCRA court is supported by the record and is free of legal error. The PCRA court's credibility determinations, when supported by the record, are binding on this Court. However, this Court applies a *de novo* standard of review to the PCRA court's legal conclusions.

***Commonwealth v. Spotz***, 18 A.3d 244, 259 (Pa. 2011) (citations omitted).

_____

3. The court was in error in failing to grant an evidentiary hearing on the additional issues listed in the amended PCRA filed by PCRA counsel.

Appellant's Rule 1925(b) Statement, 12/7/17, at 1.

[4] We direct counsel to Pennsylvania Rule of Appellate Procedure 2116(a) and warn counsel not to disregard the rule in the future. Pa.R.A.P. 2116(a) ("The statement of the questions involved must state concisely the issues to be resolved, expressed in the terms and circumstances of the case but without unnecessary detail. The statement will be deemed to include every subsidiary question fairly comprised therein. **No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby.**") (emphasis added).

To be eligible for relief under the PCRA, the petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence resulted from "one or more" of the seven, specifically enumerated circumstances listed in 42 Pa.C.S.A. § 9543(a)(2). One of these statutorily enumerated circumstances is the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

Counsel is presumed to be effective and "the burden of demonstrating ineffectiveness rests on [A]ppellant." **Commonwealth v. Rivera**, 10 A.3d 1276, 1279 (Pa. Super. 2010). To satisfy this burden, Appellant must plead and prove by a preponderance of the evidence that:

> (1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interests; and, (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the challenged proceedings would have been different.

**Commonwealth v. Fulton**, 830 A.2d 567, 572 (Pa. 2003). As this Court has explained:

> A claim has arguable merit where the factual averments, if accurate, could establish cause for relief. **See Commonwealth v. Jones**, 876 A.2d 380, 385 (Pa. 2005) ("if a petitioner raises allegations, which, even if accepted as true, do not establish the underlying claim . . . , he or she will have failed to establish the arguable merit prong related to the claim"). Whether the facts rise to the level of arguable merit is a legal determination.

- 9 -

> The test for deciding whether counsel had a reasonable basis for his action or inaction is whether no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success. Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken.
>
> Prejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Commonwealth v. Stewart*, 84 A.3d 701, 707 (Pa. Super. 2013) (some quotations and citations omitted). "A failure to satisfy any prong of the test for ineffectiveness will require rejection of the claim." *Id.*

Appellant first claims that his trial counsel was ineffective for failing to contact and interview the purported alibi witness, Benita Dixon, and that the PCRA court erred when it refused to grant him relief on this claim. Appellant's Brief at 22-23.

Our Supreme Court has explained:

> Generally, an alibi is a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party. At the core of an alibi defense is, of course, consistency between the date and time of the crime and that of the defendant's alibi.

*Commonwealth v. Ali*, 10 A.3d 282, 316 (Pa. 2010) (citations, quotations, and corrections omitted).

Further:

- 10 -

> In order to prevail on a claim of ineffectiveness for failing to call a witness, a [petitioner] must [plead and] prove, in addition to . . . the three [general ineffective assistance of counsel] requirements [listed above], that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness's testimony was so prejudicial as to have denied [the petitioner] a fair trial.

*Commonwealth v. Wright*, 961 A.2d 119, 155 (Pa. 2008).

The PCRA court thoroughly explained why Appellant was not entitled to relief on his claim that Attorney Clarke was ineffective for failing to call Ms. Dixon as an alibi witness at trial:

> During her testimony, [Attorney Clarke], reflecting back on the history of the case, seemed to be taking personal responsibility for [Appellant's] conviction, stating: "I thought that our defense was a really strong defense based on the evidence we had and I was wrong." She [was] most critical of herself in failing to persuade [Appellant] to accept a plea offer of [seven-and-a-half] to 15 [years'] incarceration. Instead, [Appellant] received what amounted to a life sentence upon his conviction.
>
> Although [Attorney Clarke] attempted to take personal responsibility for [Appellant's] conviction and sentence by portraying herself as being ineffective, the [PCRA] court did not find her attempt to take personal responsibility credible; stating for the record:
>
> > Let's cut to the chase. I just don't believe [Attorney Clarke]. I just absolutely do not believe her. . . .
> >
> > I think at the heart of her testimony is her regret that she didn't hit him over the head and convince him to take the [seven-and-a-half] to 15 plea and instead went to trial thinking she had the Asian defense or some other defense and she was wrong. Lawyers make strategy calls all the time. It was her strategy call and she feels bad about it.

- 11 -

[N.T. PCRA Hearing, 11/9/17, at 43-44.]

[Appellant's] conviction arose from his unprovoked shooting and crippling of the [Victim]. At trial, the [Victim] identified [Appellant] as the shooter, testifying that he and [Appellant] had grown up together as children, as adults, and as friends living a block apart. His identification of [Appellant] as the shooter was positive and unequivocal.

It is clear from the record that [Attorney Clarke's] decision not to call Ms. Dixon as an alibi witness resulted from a reasonable trial strategy. In light of the [Victim's] positive identification of [Appellant] as the shooter, she decided on this course of action after numerous discussions with [Appellant] and balancing the risks and benefits of calling Ms. Dixon as an alibi witness. It is also clear that this strategy was not decided upon because of any shortcoming of her office's investigator. Furthermore, in his exhibit attached to his PCRA petition, [Appellant] acknowledges he was aware of this trial strategy, wherein he stated:

> My alibi witness (Benita) left messages on my lawyer answer machine, stating that she will testify on my behalf. **My counsel said that it will not be a wise choice for her to testify for me at trial. Because the jury is going to believe that Benita will defend her boyfriend for all purpose**.

[Appellant's Statement, 3/3/15, attached as "Appendix A" to Appellant's Amended PCRA Petition, at 1 (paragraph numbering omitted) (emphasis added).]

It is clear that [Attorney Clarke], "through comparing, in hindsight, the trial strategy employed with alternatives not pursued," truly regretted the outcome at trial. However, this is not sufficient to find her trial strategy [rose] to the level of ineffective assistance of counsel. It is clear that [Appellant] has failed to prove [that the "particular course of conduct pursued by [Attorney Clarke] did not have some reasonable basis designed to effectuate [Appellant's] interests." **Stewart**, 84 A.3d at 707 (some quotations and citations omitted)]. Furthermore, in considering the potential harmful effects of Ms. Dixon's alibi testimony, [Appellant] has also

failed to establish that he was in fact prejudiced by [Attorney Clarke's] trial strategy.

PCRA Court Opinion, 9/28/18, at 7-9 (citations and some quotations and capitalization omitted).

The PCRA court's credibility and factual determinations are supported by the record and, thus, are binding on this Court. Further, the PCRA court's ultimate conclusion that Attorney Clarke's trial strategy – and her decision not to call Ms. Dixon as an alibi witness – was reasonable in light of the Victim's "positive and unequivocal" identification of Appellant, his longtime friend, as the shooter, was also supported by the record and is consistent with our law. Therefore, the PCRA court did not err when it denied Appellant relief on his ineffective assistance of counsel claim and Appellant's current claim of PCRA court error fails.

Appellant's final three claims on appeal are waived, as Appellant did not specifically list these claims of error in his Rule 1925(b) statement and Appellant's Rule 1925(b) statement was too vague to allow the PCRA court to identify the issues he currently raises on appeal. *See* Appellant's Rule 1925(b) Statement, 12/7/17, at 1 (declaring: "2. The court was in error in failing to grant the PCRA [petition] on the additional issues listed and explained in full in the amended PCRA [petition] filed by PCRA counsel[;] 3. The court was in error in failing to grant an evidentiary hearing on the additional issues listed in the amended PCRA filed by PCRA counsel"); PCRA Court Opinion, 9/28/18, at 3 (finding that Appellant's second and third numbered claims in his Rule 1925(b) statement were "too vague to allow the court to identify the issues

raised on appeal") (citations and quotations omitted); **_see also_** **_Commonwealth v. Dowling_**, 778 A.2d 683, 686-687 (Pa. Super. 2001) ("a concise statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all") (some capitalization omitted); **_Commonwealth v. Jackson_**, 900 A.2d 936, 939 (Pa. Super. 2006) ("in **_Commonwealth v. Castillo_**, 888 A.2d 775 (Pa. 2005), the Supreme Court reaffirmed the bright-line rule established in **_Commonwealth v. Lord_**, 719 A.2d 306 (Pa. 1998), which requires waiver whenever an appellant fails to raise an issue in a court-ordered [Rule] 1925(b) statement").

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/8/19