J-S25022-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM BRENNAN | : | |
| | : | |
| Appellant | : | No. 656 EDA 2021 |

Appeal from the PCRA Order Entered February 17, 2021
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0002801-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM BRENNAN | : | |
| | : | |
| Appellant | : | No. 657 EDA 2021 |

Appeal from the PCRA Order Entered February 17, 2021
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0004910-2018

BEFORE: BENDER, P.J.E., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McLAUGHLIN, J.: **FILED NOVEMBER 19, 2021**

William Brennan appeals from the order denying his Post Conviction Relief Act ("PCRA") petition. **See** 42 Pa.C.S.A. §§ 9541-9546. Brennan maintains that he is entitled to relief because his trial counsel was ineffective

_____

[*] Retired Senior Judge assigned to the Superior Court.

for failing to provide Brennan with discovery prior to him entering a guilty plea and for withdrawing his motion to reconsider his sentence. We affirm.

The lower court summarized the facts as follows:

[The] affiants are Detective Louis Bell of the Hilltown Township Police Department and Detective Patrick Horne of the Towamencin Township Police Department.

On November 13, 2017, Detective Bell responded to a report of an unresponsive subject in the vacant lot of 1507 Bethlehem Pike located in Hilltown Township, Bucks County. Upon arrival, Detective Bell identified Lukas Titus seated in the gravel lot with his legs crossed. Deputy Coroner Stockert of the Bucks County Coroner's Office responded and it was determined that Mr. Titus was deceased.

Deputy Coroner Stockert found no signs of trauma or injury to Mr. Titus' body. A white Samsung cell phone was found within 50 feet of Mr. Titus, which was later identified as belonging to Mr. Titus. Detective Mathew Molchan of the Quakertown Borough Police Department conducted a forensic examination of the cell phone belonging to Mr. Titus. A review of the comprehensive report showed a text message conversation on November 10, 2017 with a contact labeled "Billy F" and a phone number of (267) 317-9662. The message was consistent with arranging to meet for the sale of illegal drugs in the area of 815 Hilltown Township Pike in Hilltown Township, Bucks County. There were no other drug related communications after November 10, 2017 on this phone.

Detective Bell spoke with the sister of Lukas Titus who said she had dropped off Mr. Titus to the Hilltown Walmart located at 1515 Bethlehem Pike in Hilltown Township. Surveillance video from a local business showed Mr. Titus leaving the Walmart and walking in the direction of Hilltown Pike.

After further investigation, Detective Bell was able to identify Billy F with a phone number of (267) 317-9662 as belonging to William Frank Brennan [appellant herein] of 1819 Hilltown Pike. An autopsy was performed by the Bucks County Coroner's Office. Forensic pathologist Erica Williams

determined that the cause of death was cis-3-methylfent[anyl] and trans-3-methylfen[tanyl] intoxication.

Detectives subsequently spoke with Alison Hediger who was with [Brennan] at the time of the search warrant of [Brennan's] residence. She confirmed that Lukas Titus was a customer of [Brennan] that [Brennan] would sell fentanyl to. She stated that she was at [Brennan's] residence on November 10, 2017 when Lukas came to purchase fentanyl from [Brennan]. She confirmed that Lukas walked from the Walmart in Hilltown Township to [Brennan's] residence.

She noted that [Brennan] thought it was funny that Lukas walked from the Hilltown Walmart to purchase drugs. She stated she saw [Brennan] hand Lukas the fentanyl in exchange for money.

A few days after witnessing the sale, Ms. Hediger stated that [Brennan] was told by another individual that Lukas had died. Allison stated [Brennan] called her as soon as he got to the parking lot of the Walmart and told her Lukas was dead. She stated that he began to freak out and said he had to get another cell phone and that he was going to jail. She stated after this conversation [Brennan] never mentioned it again. A few hours later on that same day, [Brennan] dropped fentanyl off to Allison's house.

Detectives Bell and Horne were aware that after the overdose death of Lukas Titus, [Brennan] was actively selling fentanyl in the community between March 2018 and April 2018. Detectives Horne and Bell conducted two controlled buys from [Brennan]. In March of 2018 [Brennan] sold suspected fentanyl to a confidential informant. Again, in April of 2018 [Brennan] sold fentanyl to a confidential informant. After each controlled buy, [Brennan] returned to his residence at 819 Hilltown Pike. The suspected fentanyl was sent to NMS labs for analysis and the results showed the substances tested positive for fentanyl.

A search warrant was executed at the second floor apartment of William Brennan at 819 Hilltown [P]ike. During the search, [Brennan] showed detectives where a white rectangular plastic food container was located in the kitchen. [Brennan] stated that he would repackage the fentanyl into individual wax baggies for sale. In a lockbox located under a bag in the living room detectives located

> paraphernalia that [Brennan] would use to cut the fentanyl. Also located in the apartment was a scale, multiple small rubber bands used to bundle baggies, unused clear baggies, and $1,517 in U.S. currency.
>
> The narcotics found in [Brennan's] residence were sent to NMS labs for testing. The results showed the substance tested positive for 14.01 grams of trans-3-methylfentanyl, the same substance found in Lukas Titus' blood at the time of his death.

Trial Court Opinion, filed 4/27/21, at 2-3 (citing N.T. Guilty Plea, 11/1/18, at 24-30).

On November 1, 2018, Brennan entered an open guilty plea on two separate dockets. On the first docket, Brennan pleaded guilty to Drug Delivery Resulting Death, Possession with Intent to Deliver, Criminal Use of a Communication Facility, Involuntary Manslaughter, and Recklessly Endangering Another Person.[1] On the second docket, Brennan pleaded guilty to Possession with Intent to Deliver, two counts of Criminal Use of a Communication Facility, and Purchase of a Controlled Substance from an Unauthorized Person.[2] Brennan was sentenced to an aggregate sentence of not less than 10 to no more than 30 years' incarceration. He filed a post-sentence motion, but subsequently withdrew that motion on February 7, 2019. He did not file a direct appeal.

---

[1] 18 Pa.C.S.A. § 2506(a), 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. § 7512(a), 18 Pa.C.S.A. § 2504(a), and 18 Pa.C.S.A. § 2705, respectively.

[2] 35 P.S. § 780-113(a)(30), 18 Pa.C.S.A. § 7512(a), and 35 P.S. § 780-113(a)(19), respectively.

On March 2, 2020, Brennan filed a timely *pro se* PCRA petition.[3] The PCRA court appointed counsel, who filed an amended petition. The court held a hearing on December 3, 2020 and subsequently denied the petition. This timely appeal followed. Brennan raises one issue for our review:

> Whether the trial court erred in denying the amended petition for post-conviction relief following a hearing in which [Brennan] argued that trial counsel was ineffective for failing to provide [Brennan] with discovery prior to [him] entering a guilty plea and withdrawing his motion to reconsider, despite [Brennan's] requests for discovery[?]

Brennan's Br. at 5 (unnecessary capitalization omitted).

On appeal from the denial or grant of relief under the PCRA, our review is limited to determining "whether the PCRA court's ruling is supported by the record and free of legal error." ***Commonwealth v. Presley***, 193 A.3d 436, 442 (Pa.Super. 2018) (citation omitted).

Brennan contends that trial counsel was ineffective for failing to provide him with discovery before he entered a guilty plea, resulting in him entering an involuntary plea, and for withdrawing his post-sentence motion to

---

[3] Pursuant to Pa.R.Crim.P. 720(A)(2)(c), "[i]f the defendant files a timely post-sentence motion, the notice of appeal shall be filed. . .within 30 days of the entry of the order memorializing the withdrawal in cases in which the defendant withdraws the motion." Since Brennan did not file a direct appeal, and withdrew his post-sentence motion on February 7, 2019, his judgment of sentence became final on March 9, 2019, 30 days after he withdrew the motion and the period in which to file a direct appeal had expired. ***See*** 42 Pa.C.S.A. § 9545(b)(3). Brennan filed his PCRA petition on March 2, 2020, within one year of when his judgment of sentence became final. Therefore, Brennan's PCRA petition was timely. ***See*** 42 Pa.C.S.A. § 9545(b)(1).

reconsider his sentence. Brennan claims that there were several critical pieces of evidence that influenced his decision to plead guilty and withdraw his motion for reconsideration. Brennan's Br. at 14. First, he argues that while trial counsel discussed the coroner's report with him, counsel did not specifically recall whether he provided the report to him. *Id.* at 14-15. According to Brennan, the report was significant because "causation, *i.e.*[,] whether a controlled substance supplied by [Brennan] was the cause of the victim's death" was an issue in determining whether Brennan ought to go to trial. *Id.* Brennan argues that trial counsel did not provide Brennan with a discovery packet, despite his requests for it. *Id.*

Second, Brennan argues that while counsel summarized the content of two incriminating phone calls Brennan made, he did not give Brennan the opportunity to listen to the phone calls himself. *Id.* Brennan contends that he "was prejudiced because he was unable to listen to the phone call evidence for himself when weighing the decision whether to go to trial." *Id.*

Third, Brennan claims that he withdrew his motion for reconsideration after sentencing on the advice of counsel because he was told that proceeding on the motion would risk additional prison time. *Id.* Brennan argues that counsel erroneously advised him to withdraw his motion because the Commonwealth was potentially going to bring an additional charge of

intimidation of a witness against him if he did not do so.[4] *Id.* at 16. Brennan argues that he was not shown any evidence connected with a potential intimidation of witness charge. *Id.*

"[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on appellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa.Super. 2010). To obtain relief based on a claim of ineffectiveness, a petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result." *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014) (citation omitted). Prejudice in this context means that "absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different." *Commonwealth v. Velazquez*, 216 A.3d 1146, 1149 (Pa.Super. 2019) (citation omitted). A failure to meet any of these prongs bars a petitioner from obtaining relief. *Commonwealth v. Sneed*, 45 A.3d 1096, 1106 (Pa. 2012).

"A criminal defendant has the right to effective counsel during a plea process as well as during trial." *Commonwealth v. Hickman*, 799 A.2d 136, 141 (Pa.Super. 2002) (citation omitted). "[C]laims of counsel's ineffectiveness in connection with a guilty plea will provide a basis for relief only if the ineffectiveness caused an involuntary or unknowing plea." *Commonwealth*

---

[4] This potential charge stemmed from an allegation that Brennan contacted his girlfriend after learning that she gave a statement to the police implicating him in conducting the transaction that resulted in the victim's death.

***v. Yager***, 685 A.2d 1000, 1004 (Pa.Super. 1996) (citation omitted). The "voluntariness of [the] plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." ***Commonwealth v. Lynch***, 820 A.2d 728, 733 (Pa.Super. 2003) (quoting ***Hickman***, 799 A.2d at 141). "The law does not require that appellant be pleased with the outcome of his decision to enter a plea of guilty[.]" ***Commonwealth v. Diaz***, 913 A.2d 871, 873 (Pa.Super. 2006) (citation omitted). Instead, "[a]ll that is required is that [appellant's] decision to plead guilty be knowingly, voluntarily and intelligently made." ***Yager***, 685 A.2d at 1004 (citation omitted).

To be valid, a guilty plea must be knowing, intelligent, and voluntary. ***Commonwealth v. Pollard***, 832 A.2d 517, 522 (Pa.Super. 2003). The court therefore must conduct an on-the-record inquiry to determine whether the plea is voluntarily and knowingly tendered. ***Commonwealth v. Hodges***, 789 A.2d 764, 765 (Pa.Super. 2002) (citing Pa.R.Crim.P. 590(a)). The court must develop a record that affirmatively shows that the defendant understands: (1) the nature of the charges to which the defendant is pleading guilty; (2) the factual basis for the plea; (3) the right to a jury trial; (4) the presumption of innocence; (5) the permissible ranges of potential sentences and fines; and (6) that the court is not bound by the terms of the agreement unless it accepts it. ***Commonwealth v. Kelley***, 136 A.3d 1007, 1013 (Pa.Super. 2016).

In deciding whether a guilty plea was knowing, intelligent, and voluntary, a court should consider the totality of the circumstances

surrounding the entry of the plea. ***Commonwealth v. Allen***, 732 A.2d 582, 588-89 (Pa. 1999). Further, a defendant who elects to plead guilty is required to answer all questions during the plea colloquy truthfully and may not later assert grounds for withdrawing the plea that contradict the defendant's statements during the colloquy. ***Pollard***, 832 A.2d at 523.

Here, at his guilty plea hearing, the court conducted an extensive colloquy on the record, wherein Brennan acknowledged he did not have to plead guilty, he had the right to a jury trial, the Commonwealth bore the burden at trial of proving guilt beyond a reasonable doubt, and his decision to plead guilty was not the result of any coercion or promises. N.T. Guilty Plea, 11/1/18, at 12-14, 16. He also agreed that he had enough time to speak with his attorney about his decision to plead guilty, his attorney went through the evidence against him in great detail, and he was satisfied with his attorney's legal representation. ***Id.*** at 16, 18, 19. The court also explained the nature of the charges to which Brennan was pleading guilty, the factual basis for the plea, and his potential range of sentence and fines. ***Id.*** at 4-11, 24-30. Brennan agreed to the accuracy of the Commonwealth's recitation of the facts. ***Id.*** at 30. Brennan also signed a written guilty plea colloquy that was entered into evidence. ***Id.*** at 20-21.

At the PCRA hearing, trial counsel testified that he met with Brennan many times at the prison and reviewed all of the evidence and discovery with him. N.T. PCRA Hearing, 12/3/20, at 15-16. Counsel stated that he provided Brennan with all paper discovery. ***Id.*** at 20. He said he was unable to provide

some electronic discovery, such as phone calls, due to limitations in meeting with Brennan at the prison, but he thoroughly summarized the electronic discovery for him. *Id.* at 20-21. Counsel could not recall if he specifically provided Brennan with the coroner's report, but he did discuss the report with him. *Id.* at 20. He also stated that he had consulted with two experts – a forensic toxicologist and a pathologist – who both gave verbal conclusions unfavorable to Brennan with respect to causation, *i.e.*, whether the fentanyl actually killed the victim. *Id.* at 19. He discussed these reports with Brennan. *Id*. Counsel testified that he did not want these reports to be put in writing because he did not want them to be discoverable nor did he want his client to pay for unfavorable reports. *Id.* at 19-20.

Trial counsel further testified that the Commonwealth's potential additional charge of intimidation of a witness was not a factor in the decision to withdraw Brennan's post-sentence motion. *Id.* at 21. Rather, that potential charge was only considered when evaluating Brennan's decision to plead guilty or go to trial. *Id.* Brennan himself testified that it was his decision to withdraw the motion. *Id.* at 8.

Based on the totality of the circumstances, we conclude that Brennan knowingly, voluntarily, and intelligently entered his guilty plea. Because Brennan voluntarily and knowingly entered his guilty plea, and stated that he was satisfied with his counsel, his ineffectiveness claims lack arguable merit. *See Commonwealth v. McCauley*, 797 A.2d 920, 922 (Pa.Super. 2001)

(stating "[a] defendant is bound by the statements he makes during his plea colloquy").

While Brennan contends that he ought to have had access to the coroner's report and the phone recordings, he concedes that counsel discussed both with him and has not identified any particular aspect of either item that would have mattered to his decision-making process. As for the withdrawal of the motion to reconsider sentence, the PCRA court credited trial counsel's testimony that the potential additional charge was only a consideration when Brennan was deciding whether to plead guilty. It was not a factor in Brennan's decision to withdraw the post-sentence motion. **See** Tr. Ct. Op., filed 4/27/21, at 9 (citing N.T., 12/3/20, at 21). Therefore, the PCRA court properly denied Brennan's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/19/2021