J-S24027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| LAMONT CARLOS SNIDER | : | |
| | : | |
| Appellant | : | No. 104 WDA 2025 |

Appeal from the PCRA Order Entered December 20, 2024
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0003155-2019

BEFORE: NICHOLS, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:               **FILED: AUGUST 25, 2025**

Lamont Snider appeals from the order dismissing his Post Conviction Relief Act ("PCRA") petition. *See* 42 Pa.C.S.A. §§ 9541-9546. He claims his trial counsel was ineffective. We affirm.

The facts of this case were previously summarized as follows:

> At trial, the victim, Rashod Crockett, a State Prison Corrections Officer who was off duty at the time of the incident, testified that he and a companion went to several bars on the evening of October 5-6, 2019 to celebrate his birthday. While at Scooter's bar in the early morning hours of October 6, 2019, the victim and [Snider] were involved in verbal argument. The argument escalated to the point where both individuals threw punches. After the altercation, the victim left the bar and went home, but returned to the bar about 10 minutes later to check on his companion who had fallen asleep outside the bar.
>
> [Snider], his cousin, and a friend were in the parking lot when the victim arrived back at the bar's parking lot. Another argument ensued, and [Snider] acted aggressively and told the victim[,] "I'm about to fuck you up."

[Snider's] friend, Deverich Ohmer, testified that he saw the victim get out of his car with his hand behind his back where a concealed weapon might be hidden and yelled out that he thought the victim had a gun. Ohmer never actually saw the victim with a gun or any other weapon, however. Ohmer further testified that the victim said[,] "[N]ah, nah, nah, I don't got a gun[,]" and immediately started swinging into the group where [Snider] was standing and hit [Snider] hard.

The victim punched [Snider], and a scuffle ensued. During the scuffle, [Snider] stabbed the victim. When he realized he had been stabbed, the victim tried to get away; he ran away, but [Snider] chased him. The victim fell, and [Snider] stood over top of him and stabbed him several more times. [Snider] then got into a vehicle and left the scene. The victim did not have a knife or a weapon on his person that evening, nor did the victim have a gun in his car.

The victim sustained several stab wounds to his body. Wounds on forearms were so deep that blood would spurt out with each pulse. The pants and the shirt the victim was wearing that night had several holes in them from where the knife had entered.

Patrolman Michael Attalla of the Erie Police Department responded to the scene in response to a 911 call. He testified that there were people huddled around a male, rendering aid to a man who was lying on the ground. Patrolman [Attalla] observed multiple stab wounds and noticed that the victim was bleeding profusely.

That same evening/early morning, the victim [w]as taken by ambulance to UPMC Hamot hospital. The victim stayed in the hospital for over a week and required surgery for his wounds. Medical records for the victim indicated that he required an [exploratory laparotomy] surgery and a small bowel repair for his stab wounds. The victim had multiple stab wounds to his chest and torso, resulting in a lacerated diaphragm and requiring the small bowel repair, and also suffered stab wounds to his right posterior, and arms. Two nerves in his arms were severed as a result of the incident.

> [Snider] was also injured as a result of the altercation. Medical records indicate he suffered a laceration on his left hand and a fracture above his left eye which was apparently caused by the victim's punch when the fight first started in the parking lot.
>
> [Snider] was interviewed by police several days after the incident. In his interview, [Snider] denied having a knife or knowing who had a knife on the night in question. [Snider] stated that he did not know how the victim had gotten stabbed seven times. [Snider] did not specifically tell the police that he acted in self-defense in the altercation.

Trial Ct. Op., filed Feb. 16, 2022, at 2-4 (citations to trial transcript omitted; "Mr." omitted throughout).

At trial, the victim testified that he wore his prison guard uniform to the bar that evening. N.T., July 13, 2021, at 5-7. Snider's counsel questioned the victim about having stopped at three bars that evening and consumed numerous alcoholic drinks, and distinguished his trial testimony from his testimony at the preliminary hearing. *Id.* at 7-11. The victim admitted that while intoxicated he went home, changed cars, and drove back to the scene. *Id.* at 18, 22. Counsel reviewed the video of the incident with the victim, and the victim agreed that it showed him taking off his coat and attempting to push someone out of the way. *Id.* at 16, 20. The victim also admitted to throwing the first punch. *Id.* at 20.

The Commonwealth admitted into evidence the victim's medical records from that evening. Those records included the following:

> Patient states that he was standing outside of a bar, when he was suddenly assaulted by an individual with a knife, stating he was stabbed multiple times in the abdomen as well as his back. . . . Patient is a corrections officer and is unaware of who assaulted him.

- 3 -

Brief in Support of Supplemental PCRA Petition at Exh. 1. Counsel did not use the records on cross-examination of the victim.

A jury convicted Snider of criminal attempted murder, aggravated assault, and possession of an instrument of crime.[1] The court sentenced Snider to a term of 10½ to 21 years' incarceration. Snider appealed and we affirmed his judgment of sentence. *See Commonwealth v. Snider*, 287 A.3d 880, 2022 WL 12196947 (Pa. Super. filed Oct. 21. 2022) (unpublished mem.) . In May 2023, the Pennsylvania Supreme Court denied his petition for allowance of appeal.

In April 2024, Snider filed the instant, timely PCRA petition. The court appointed PCRA counsel who filed a supplemental pleading. At an evidentiary hearing, Snider testified that trial counsel never reviewed the victim's medical records with him. N.T., Aug. 26, 2024, at 8. Trial counsel testified that the strategy in the case was self-defense. *Id.* at 18. Counsel emphasized that video from inside the bar showed that the victim started the fight and video from outside the bar showed that the victim approached and punched Snider. *Id.* He further noted the bartender was a witness for the defense and Snider's friend testified that he shouted that the victim had a gun. *Id.* at 19. Counsel did not recall the medical records but stated that "[i]f [he] had them, [they] went over them." *Id.* Counsel asserted that he challenged the victim's testimony surrounding the incident. *Id.* at 22. Counsel acknowledged that if

_____

[1] 18 Pa.C.S.A. §§ 901(a), 2501(a), 2702(a)(1), and 907(a), respectively.

the victim had said to the medical personnel that he did not know who assaulted him and "if he had said that he was standing outside of the bar and was just jumped by some unknown individual and stabbed" that would be "relevant impeachment material." *Id.* at 24.

On December 20, 2024, the court dismissed Snider's PCRA petition. This timely appeal followed.

Snider raised the following issue:

> Whether the lower [c]ourt committed legal error and abused its discretion in failing to grant PCRA relief based upon the claim that defense counsel was ineffective in failing to duly impeach and confront the [C]ommonwealth witness Rashod Crockett as to inconsistent statements he made which were documented in medical records arising out of his treatment directly after the subject incident comprising the criminal charges?

Snider's Br. at 2.

On appeal from the denial or grant of relief under the PCRA, our review is limited to determining "whether the PCRA court's ruling is supported by the record and free of legal error." *Commonwealth v. Presley*, 193 A.3d 436, 442 (Pa.Super. 2018) (citation omitted).

Snider raises a claim of counsel's ineffectiveness. "[C]ounsel is presumed to be effective and the burden of demonstrating ineffectiveness rests on [the] appellant." *Commonwealth v. Rivera*, 10 A.3d 1276, 1279 (Pa.Super. 2010). To obtain relief based on a claim of ineffectiveness, a petitioner must establish: "(1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the

petitioner suffered actual prejudice as a result." ***Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014). Prejudice in this context means that, "absent counsel's conduct, there is a reasonable probability the outcome of the proceedings would have been different." ***Commonwealth v. Velazquez***, 216 A.3d 1146, 1149 (Pa.Super. 2019) (citation omitted). A failure to meet any of these prongs bars a petitioner from obtaining relief. ***Commonwealth v. Sneed***, 45 A.3d 1096, 1106 (Pa. 2012).

Snider argues that trial counsel was ineffective for failing to utilize the victim's medical records as impeachment material. Snider's Br. at 4. He notes that in the medical report, the victim indicated he did not know who assaulted him and described the assault differently from his trial testimony. ***Id.*** at 5. Snider maintains that counsel "failed to discern the impeachment material . . . and neglected to employ the admissions" to challenge the victim's veracity and his ability to recall the facts. ***Id.*** at 5-6. Snider asserts that at the PCRA hearing, trial counsel testified he did not remember whether he reviewed the medical record, but that it was his custom and practice to review all discovery materials. ***Id.*** at 6; ***see also*** N.T., Aug. 26, 2024, at 19-22.

Snider points out that at the PCRA hearing, counsel conceded that a primary element of the defense involved impeaching the victim's testimony, including highlighting inconsistences between the victim's preliminary hearing testimony and his trial testimony about the amount of alcohol he had consumed and who instigated the altercation. ***Id.*** at 7. Snider further notes that counsel emphasized at trial that the victim was in his prison guard

uniform, which he contends created "an indicia of authority." *Id.* at 8. Snider asserts that counsel's failure to use the victim's statements from the medical records is inexplicable, especially considering his concession that the statements were significant and relevant to Snider's defense. *Id.* at 8-9.

Snider asserts that the first two prongs of the ineffectiveness test are satisfied "without question" as his claim regarding counsel's failure to use the impeachment material is of arguable merit and counsel offered no strategic basis for his inaction. *Id.* at 10. He further asserts that counsel's ineffectiveness caused him actual prejudice. He asserts that counsel might have offered a defense other than self-defense had he realized the victim initially stated he did not know who assaulted him. *Id.* at 11.

Snider further argues that had counsel employed the medical records, he could have explored the inconsistency between the victim's statements and the underlying fact that Snider and the victim knew each other. Snider alleges counsel could have argued that that the victim informed the hospital staff he did not know who assaulted him because he realized the totality of the circumstances could lead a reasonable person to believe that he was at fault for "instigating and prolonging and aggravating the altercation with Snider." *Id.* at 13.

The PCRA court found that Snider had not proven prejudice. PCRA Ct. Op., filed Dec. 20, 2024, at 8. The court concluded that counsel conducted an "aggressive and effective cross-examination." *Id.* at 5. It pointed out that counsel was able to have the victim acknowledge several points on cross-

examination such as the victim wearing his prison uniform, his alcohol consumption, and his aggressive actions caught in the video recording of the incident. *Id.* at 5-6. The court added that there was other evidence proving Snider's involvement in the incident and at the PCRA hearing Snider did not testify that he was not involved.

The PCRA court noted that self-defense was a viable theory and was presented to the jury. It found that "any attempt to cross-examine the victim about what he may or may not have said to the hospital staff when he was first treated would [not] have had any significant impact upon the jury's determinations." *Id.* at 8. The court concluded that Snider failed to prove that the trial would likely have had a different result if trial counsel had used the statements from the medical records.

The record supports the PCRA court's findings, and it did not err in concluding Snider failed to prove prejudice. Both direct and circumstantial evidence showed that Snider participated in the incident, and the transcript establishes counsel conducted a thorough cross-examination of the victim. Additional cross-examination based on the medical records would not have altered the outcome.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>8/25/2025</u>